Doe, *ex dem.* Samuel Mix,

*against*

Joel Whitlock, Tenant.

EJECTMENT to recover possession of sixty-four acres of land in the township and island of *South Hero* in Lake *Champlain*, being Lot No. 75.

Common rule entered, and general issue to the Jury.

Plaintiff read the charter of *South Hero*, signed by the Governor of the State, dated 27th *October*, 1779, in which *James Hopkins* appears to be an original grantee, and then stated that the land demanded was severed to the right of *Hopkins*, and that his title accrued by the sale of the land at public vendue for the non-payment of a tax under the act " for the purpose of raising thirty thousand dollars," passed *November* 3, 1791.

He then read the warrant of the State Treasurer, directing the first constable of *South Hero* to collect one halfpenny on each acre of land in said town, dated 2d *October*, 1792.

He then exhibited a paper purporting to be the assessment of the tax by the selectmen on the lands in the town, dated 1st *February*, 1793.

Defendant's counsel objected to this paper being read to the Jury, and took two exceptions:

First. That the assessment does not appear to have been returned to the Treasurer of the State.

To render valid a sale of land under the act for raising 30,000 dollars, passed *November* 3d, 1791, an attested copy of the rate-bill or general list made by the selectmen and delivered to the constable of any incorporated town, must be shewn to have been deposited with the Treasurer of the State, by the 1st *November,* 1793.

Doe
v.
Whitlock.

Secondly. That the assessment is not made agreeably to the statute, in that the lots, ranges, &c. are not particularly specified; but the lands are described generally, as being holden by the original proprietors.

*Per Curiam.* The paper cannot be admitted in evidence. When a title to real estate is defeated by operation of law, the statute must be strictly pursued.

The object of the act in directing that the return of the assessment by the selectmen should be made to the Treasurer, is important and obvious. It is to give notice to non-resident owners of the precise amount of the demand which is made upon their lands for the purposes of government, in order that they might not be divested of their lands through mistake or ignorance. Perhaps no government has been more careful in this respect than that of *Vermont.* The whole tenor of this act exhibits a marked attention to rights of the land owners.

It levies a tax of one halfpenny per acre on all the lands in the State for a great and beneficial purpose, no less than to raise the sum to be paid to the State of *New-York*, agreed upon by the several State commissioners for the final adjustment of certain controversies which had unhappily arisen between this and that highly respectable State. The act passed *November* 3d, 1791, but the tax was to be collected and paid into the treasury by the 1st day of *January*, 1794. The State Treasurer is directed between the 1st of *October* and the 1st of *November*, 1792, to issue his warrant to the first constable of each or-

ganized town in the State to collect the tax in their towns respectively. Upon the receipt of the warrant the constable is to give notice to the selectmen of the town, who, before the 1st of *March*, 1793, are to make out and deliver to the constable a rate-bill containing a list of all the lands in such town held in severalty, and the number of acres contained in each lot, and the range in which it lies, or the division to which it was drawn or pitched, and the tax to be paid on the same; and if there be undivided land in such town, the selectmen shall, under their oath of office, make an estimate of the quantity of the land so undivided, to the best of their judgment, which, together with the other lands in said town, they shall form into one general list, *and return an attested copy thereof,* on or before the 1st of *November*, 1793, to the Treasurer of the State; and if the tax should not be paid by the 1st *September*, 1793, the collector was to proceed to advertise in all the public newspapers in the State, six weeks successively, the sum assessed to each person, the place where the same would be received, and, in case of delinquency, the place where and the time when the same would be sold; and in twenty days after such publication, the collector on non-payment might proceed to vend the land.

The return was to be made to the Treasurer's office, not merely as a direction to that officer in his duty, but the Treasurer's office was to serve as a public place of deposit for the assessments. That before the publication in the newspapers, the selectmen's return of the assessment might be resorted to by the land owners to learn the amount of their several taxes; and it might at all times serve as a check

Doe
v.
Whitlock.

upon the collector, that he might not collect a larger sum than legally assessed.

This general list must ascertain all the lands in such town held in severalty, and the number of acres contained in each lot, and the range in which it lies, and the division to which it was drawn or pitched, and the tax to be paid on the same.

The Court consider the paper offered in evidence to be defective in substance also. The general terms in which the assessment is made out, does not answer the beneficial requirements of the act, which are to enable every land owner to know the precise sum he has to render to the government, and to enable him to correct the collector in any departure from official duty.

It is therefore the opinion of the Court, that the paper adduced by the plaintiff cannot be read to the Jury.

*Tyler*, Judge, *hesitante* as to the first exception.

Plaintiff nonsuited.

*Elnathan Keyes*, for plaintiff.
*W. C. Harrington*, for defendant.